

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

AES:LKG/AS
F#: 2020R00291

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 11, 2020

<u>By ECF and Email</u>

The Honorable Nicholas G. Garaufis
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Chierchio, <u>et al.</u>
                 <u>Criminal Docket No. 20-306 (NGG)</u>

Dear Judge Garaufis:

        The government respectfully submits this letter in response to defendant Frangesco Russo's third request for release pending trial, filed on December 9, 2020 ("Mot."). See Dkt. Entry No. 60. Having retained new counsel after the Court's decision to remand him, Russo states—for the first time—that he has a COVID-19 co-morbidity: a "rare" respiratory condition. Mot. 2. The defendant fails to mention, however, that despite his alleged condition, prior to his incarceration he regularly smoked marijuana. Regardless of whether Russo actually suffers from any such condition, he remains too dangerous to be released into the community while he awaits trial, no matter what bail package he can offer.

I.       <u>The Court's Decision to Remand Russo</u>

        The government sought Russo's detention because he (1) threatened to hurt, shoot and kill Gregory Altieri and his family, including with the type of tactical shotgun the arrest team recovered from under Russo's bed after his arrest, (2) threatened at least one other person, (3) repeatedly lied to Pre-Trial Services ("Pretrial"), (4) participated in a $107 million fraud scheme against lottery winners, and (5) faces the prospect of a decade-long prison term for fraud- and extortion-related offenses. <u>See</u> ECF No. 9. ("Detention Ltr."). With its detention memorandum, the government submitted a photograph of Russo's shotgun:



      The Court weighed all these factors in favor of detention, focusing in particular on the nature of Russo's threats and his specific reference to the weapon pictured above:

> In this case, I'm looking at a very dangerous weapon, and I'm looking at an individual who has allegedly been recorded as saying that, "I have a tactical shotgun. If anything gets crazy with you guys, just come straight here. I have all the lights on, I will tactically shoot everybody's kneecaps off. I'm not worried." And then we also have this discussion about yanking the teeth out of someone's son's mouth. You know, I have handled organized crime cases for 20 years. I've never run across that kind of a threat [counsel's interruptions omitted] in 20 years . . . . That's something new to me. And it's very troubling that we have someone here who is allegedly in possession of a tactical weapon. . . . . I deem anyone who's got a tactical shotgun with a laser under his bed [and] is accused of having made threats which refer to such a weapon, that that's an extremely concerning issue, and that the Court can't view that as just hyperbole or that you say around the bar with your friends.

Transcript of August 19, 2020 Bail Hearing ("Bail Tr."), 19:11-21:3. Later in the proceeding, the Court again rejected the idea that Russo's threats were mere "bravado," noting that they were "serious threats," particularly since they were made in the context of extortion. Bail Tr. 30:17-18. "[T]hese comments demonstrate, along with the seized weapon and ammunition, . . . that the defendant . . . constitutes a threat to the community." Bail Tr. 31:7-10.

      The Court also noted that Russo presents a significant risk of flight. He could have access, the Court explained, to unknown assets—like the approximate $80,000 in cash the government unexpectedly found in Russo's house, Bail Tr. 28:7-8—which he could use to flee before Pretrial or the government would receive notice. Bail Tr. 24:1-24-21.

      The Court observed that Russo's threats were not its lone concern, and also noted Russo's lies to Pretrial. Tr. 25:6-17. In particular, the Court was troubled that Russo purposefully failed to tell Pretrial about some of his assets, claiming to have just $15,000 in his checking account and a monthly cashflow of about $4,400. See Pretrial Services Report at 3. As the government noted, Russo failed to disclose, among other things, ownership in houses worth millions of dollars, boats, and a bank account with about $185,000. Tr. 7:5-22. While Russo tried to portray himself as a middle-class individual with modest assets, his lavish lifestyle—

funded by fraud—was anything but modest. The government identified one telling comment Russo made to Kurland as the co-conspirators discussed scaling back their spending given the investigation by the Federal Bureau of Investigation ("FBI"): "You know, I don't need the helicopters, you know, maybe I take a private jet once a year to Florida with the family." Detention Ltr. 19.

II.     Russo's Motion to Reconsider

After reviewing discovery provided by the government, Russo moved the Court to re-consider its decision to detain him. Notably, having listened to his own threats on intercepted calls, Russo did not dispute that he made death threats, that he lied to an arm of the Court, or that the evidence of his crimes is nothing short of overwhelming. Instead, he argued that "further investigation and discovery of additional information," Dkt. Entry No. 42, at 3, revealed his threats as mere "bluster, using bombast and bravado language," id. at 5, all uttered in frustration over Altieri's failure to pay a so-called "legitimate" loan, id. at 4-5. Russo added that he was actually trying to help Altieri, not hurt him. Id. at 5. In support, Russo noted that the FBI only recovered one tactical shotgun, and he had threatened to kill Altieri with multiple weapons. Id.

The Court denied the motion to reconsider, reaffirming that Russo was too dangerous to be released. Dkt. Entry No. 47. Two days later, new counsel noticed his appearance for Russo. Dkt. Entry No. 49.

III.    Instant Motion

Russo's new attorney notes that he did not represent Russo for his first three bail applications (the first before a presiding magistrate judge and the two before this Court), and does not dispute the finding that Russo poses a danger to the community. Mot. 2. Instead, he is moving under 18 U.S.C. § 3142(i)(4), claiming that the recent outbreak at the Metropolitan Detention Center ("MDC") requires Russo's release because counsel recently learned Russo "suffers from a rare condition known as Reactive Airways Disease which places him at high risk for mortality if he is infected with the highly contagious COVID-19." Mot. 2.

IV.     Legal Standard

Under 18 U.S.C. § 3142(i), the Court may "permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." "The defendant has the burden of establishing circumstances warranting temporary release pursuant to § 3142(i)." United States v. Bothra, No. 20-1364, 2020 U.S. App. LEXIS 16383, at *4 (6th Cir. May 21, 2020); United States v. Dupree, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011) (same). "There is limited authority addressing what constitutes a compelling reason;" prior to the pandemic, it has been granted "'sparingly to permit a defendant's release where, for example, he is suffering from a terminal illness or serious injuries.'" Bothra, 2020 U.S. App. LEXIS 16383, at *5 (quoting this Court in United States v. Hamilton, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020)).

3

During the COVID-19 pandemic, courts in this district have recognized that § 3142(i) is not an invitation to disregard a defendant's dangerousness, which puts the community at risk, even if the release is temporary. In United States v. Passley, for example, the district court noted its concerns for the defendant's health but found that the defendant presented too much risk to the community to be temporarily released. No. 15-CR-287-20 (WFK), 2020 WL 1815834, at *4 (E.D.N.Y. Apr. 9, 2020) (comparing the defendant to another defendant, whose bail application was also denied despite having suffered recent heart attack and stroke). See also United States v. Jackson, 20-CR-46 (EK), ECF No. 16 (rejecting bail for a defendant who appeared on the high-risk inmates list and was charged with possessing a firearm as a felon); United States v. Bryant, 18-CR-92 (WFK), ECF No. 247 at 8 (noting that, with regard to a defendant on the BOP's high-risk inmates list, while it "is cognizant of the severity of the current pandemic, particularly as it relates to vulnerable individuals such as Defendant, it does not present a sufficiently compelling reason for release in this case" because the "Defendant poses a danger to the community and a flight risk if released, even temporarily"); United States v. Jimenez, No. 20-CR-122-LTS, 2020 U.S. Dist. LEXIS 72436, at *5-10 (S.D.N.Y. Apr. 24, 2020), (denying application for release despite "two serious health conditions" that placed him on the high-risk inmates list because the defendant was awaiting trial on drug and firearm charges that exposed him to a ten-year, "flight-inducing" mandatory minimum sentence).

The Second Circuit has recently affirmed this cautious approach. In United States v. Bryant, 827 F. App'x 122, 125-26 (2d Cir. 2020), the court held that despite the defendant's extraordinarily serious medical condition recognized by Judge Kuntz (and his status as among the most vulnerable inmates at the MDC), the district court did not err in holding that temporary pretrial release under 18 U.S.C. § 3142(i) was not required. In Bryant, the Second Circuit found instructive that although trial had been scheduled, the defendant still had eight months to prepare. Id. at 126.

V.     Analysis

Russo cannot be released, temporarily or otherwise, because he is too dangerous. In fact, Russo does not dispute the Court's finding, by clear and convincing evidence, that he is a danger to the community. Mot. 2. That alone resolves Russo's motion: dangerous individuals are not appropriate candidates for pre-trial release. Both common sense and the statute compel this result; the provision referenced by § 3142(i) provides that a defendant "shall" be detained if a judicial officer finds, as this Court has, that the defendant is too dangerous to leave pretrial detention. 18 U.S.C. § 3142(e)(1).

During the pandemic, courts across jurisdictions have uniformly denied temporary release for defendants who had been found to be too dangerous to be released. See, e.g., United States v. Hernandez, No. 1:20-cr-00056-PAC-3, 2020 U.S. Dist. LEXIS 73050, at *8 (S.D.N.Y. Apr. 24, 2020) (noting that the defendant was detained because of the "potential danger to the community and risk of flight required that bail be denied" and holding that new contentions, brought under 18 U.S.C. § 3142(i) did not "change that determination"); United States v. Vizcaino, 2020 U.S. Dist. LEXIS 65212, at *10 (S.D.N.Y. Apr. 14, 2020) (collecting authority where motions for temporary release under § 3142(i) were denied for defendants with serious pre-existing conditions because, inter alia, they posed a danger to the community); United States

4

v. Marrero, No. 1:20CR130, 2020 U.S. Dist. LEXIS 213673, at *3 (N.D. Ohio Nov. 16, 2020) (denying request for temporary release under § 3142(i), noting that "While the existence of COVID-19 is extraordinary in the normal sense of the word, it has no impact on Defendant's flight risk or danger to the community. The Magistrate Judge previously determined Defendant presented a danger to the community. And the presence of COVID-19 does not lessen Defendant's danger to the community."); United States v. Furlow, No. 20-cr-30050, 2020 U.S. Dist. LEXIS 215288, at *7 (C.D. Ill. Nov. 18, 2020) (finding a compelling reason for temporary release under § 3142(i) because of a significant pre-existing condition but declining to release the defendant because of the danger he posed to the community and his flight risk); United States v. Bradshaw, No. DKC 20-0070, 2020 U.S. Dist. LEXIS 143828, at *5 (D. Md. Aug. 11, 2020) (holding that the risk to a defendant's health "does not offset the very serious risk of flight and danger to the community that would be posed by his release"). Russo does not challenge the Court's finding regarding dangerousness, and does not explain how, despite that finding, he could still be released.[1]

In any event, Russo does not present a "compelling" basis for his release for at least three reasons. *First*, while it is true that the MDC has a significant COVID-19 outbreak, the government has learned from the Bureau of Prisons that Russo is not housed within the three MDC units that are experiencing an outbreak, where all the inmates have been quarantined and are in the process of being tested to stop a further spread. Of course, much like the rest of the public, Russo remains at risk of exposure to COVID-19, as we are all living through a second wave of the pandemic. But given where he is housed within the MDC, Russo cannot present a compelling reason for release.

*Second*, even if Russo were housed in a unit with a significant outbreak and even if he did have a respiratory condition, he would still fail to meet the compelling-reason bar set by § 3142(i). At 39 years old, Russo is relatively young, and when he first argued for release, he did not present evidence of any pre-existing medical conditions that made it riskier for him to be incarcerated. Even now, he lists only one such condition.[2] But older, sicker defendants around the country, with multiple CDC-recognized co-morbidities have been routinely denied relief, both under the compelling prong of § 3142(i) and the extraordinary-and-compelling prong of the Guidelines (following convictions), including in facilities with active outbreaks. See, e.g., Bryant, 18-CR-92, ECF No. 247, at 4 (WFK) (E.D.N.Y.) (denying relief, under § 3142(i) to 56-year-old defendant suffering from "tuberculosis, emphysema, remote granulomatous disease, and

---

[1] As the Court noted, Russo may also be a flight risk, a determination the Court did not have to make, but which is another factor weighing against release.

[2] The Center for Disease Control and Prevention ("CDC"), lists conditions that place adults at greater increased risk of severe illness from COVID-19. Respiratory conditions are not on that list. The CDC also provides underlying conditions that "might" place adults at such a risk, and that list includes asthma, which, elsewhere, the CDC couples with "other chronic lung disease." See https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. For purposes of this motion, the government assumes that Russo's purported respiratory condition qualifies as a possible COVID-19 co-morbidity.

prostate cancer"); United States v. Begaye, No. CR-19-08113-001-PCT-DLR, 2020 U.S. Dist. LEXIS 84023, at *7 (D. Ariz. May 13, 2020) (finding that "asthma, high blood pressure and diabetes while facing the spread of the coronavirus within his detention facility" did not warrant release under § 3142(i)).[3]

*Third*, there is reason to doubt the significance of Russo's newly-reported respiratory condition. Russo informed Pretrial that he was in "good physical health with no medical problems." Russo Pretrial Report, at 3. And intercepted communications showed that Russo regularly smoked (and procured) marijuana prior to his incarceration. See, e.g., Sessions 225, 226, 2687, 2885, 2894, 4248, 4253, 4255, 4256, 6420, 6421, 6422, 6713, 6714, 3304, 1765, 1766, 5998, 11043, 11259, 11264, 11266. In fact, during Russo's search and arrest, the FBI recovered Russo's membership card in a "medical marijuana program."

In short, if Russo has a respiratory condition, it appears not to have affected his smoking habits, was not at the forefront of his mind when he submitted to his Pretrial interview,

---

[3] See also United States v. Ogarro, No. 18-cr-373-9 (RJS), 2020 U.S. Dist. LEXIS 84702, at *6 (S.D.N.Y. May 13, 2020) (denying motion because "merely alleging that [the defendant] has asthma, is in prison, and . . . there is a COVID-19 outbreak nationwide" is insufficient to establish extraordinary and compelling circumstances); United States v. Weingarten, No. 08-cr-571 (BMC) (E.D.N.Y.), 2020 U.S. Dist. LEXIS 91640, at *5 (E.D.N.Y. May 25, 2020) (denying relief to 70-year-old defendant who "suffers from kidney, bladder, and urinary conditions, as well as from an unspecified prostate disorder, pericarditis, and 'heart problems,'" explaining that infection was not likely, even in a facility where 48 inmates had tested positive for the virus); United States v. Garcia, No. 18 CR 802 (CM), 2020 U.S. Dist. LEXIS 84754 (S.D.N.Y. May 13, 2020) (denying compassionate release to 62-year-old defendant convicted of drug offenses, who suffered from, among other conditions, asthma, hypertension, heart conditions, diminished lung capacity because a cancerous tumor had to be removed, and was housed in facility with 40 documented cases of virus); United States v. Baker, 97-CR-877, ECF No. 346, at 5, 11 (denying relief for 81-year-old defendant who needs a walker to get around and suffers from "diabetes, hyperlipidemia, anemia, carpal tunnel syndrome, glaucoma, hypertension, angina, hemorrhoids, periodontitis, dermatitis, urinary incontinence, retinopathy, heart disease, chronic kidney disease and lower back pain"); United States v. Lytch, 02-CR-891, Dkt. Entry No. 630, at 4 (ARR) (E.D.N.Y.) (May 8, 2020) ("[W]hile at least hypertension is a recognized health condition which heightens an individual's risk with regard to COVID-19, [the defendant] has not presented sufficient evidence that he currently suffers from a preexisting condition, particularly in light of his relatively young age [of 55]"); United States v. Gioeli, No. 08-cr-240 (BMC), 2020 U.S. Dist. LEXIS 89790, at *1 (denying motion made by 67-year-old racketeering who, among other ailments, has diabetes, has had heart attacks and heart surgery, and who is in FCI Danbury, which has a major outbreak); United States v. Rabuffo, 16-CR-148, Dkt. Entry No. 31 (ADS) (E.D.N.Y. May 14, 2020) (denying relief for 61-year-old defendant sentenced to 16 months for tax-evasion, also housed in FCI Danbury); United States v. Collier, 12-CR-6003, Dkt. Entry No. 68, at 6 (CJS) (W.D.N.Y. May 8, 2020) (denying relief for 62-year-old defendant with "several severe health problems, including lupus, high blood pressure, hepatitis C, and a spot on her lung," who had been convicted of a drug offense and is incarcerated at FCI Danbury).

and was not sufficiently significant for his prior experienced counsel to mention to either Judge Bloom or to this Court in the course of the three prior times that he sought bail. It is clearly not a compelling circumstance requiring release for a dangerous defendant who also poses a risk of flight, and who has a history of being deceptive during bail proceedings. Accordingly, even if a dangerous defendant could be released and even if the defendant was housed in a unit with an active outbreak, the Court should still deny his motion.

VI.     Conclusion

For the foregoing reasons, the Court should deny Russo's renewed request for pre-trial release.

Respectfully submitted,

SETH D. DuCHARME
Acting United States Attorney

By:           /s/
Andrey Spektor
Lindsay K. Gerdes
Assistant U.S. Attorneys
(718) 254-6475/6155

cc:  Defense Counsel of record (by ECF)
     Clerk of the Court (NGG) (by ECF)

7